UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SHAUNTRELL MANUEL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:14-CR-75 |
| ) | No. 2:17-CV-101 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION

This matter is before the Court on the "Motion To Vacate, Set Aside, Or Correct A Sentence Pursuant to 28 U.S.C. § 2255," [Doc. 99],[1] filed by Shauntrell Manuel ("Manuel" or "petitioner"). The United States has responded in opposition, [Doc. 101]. On January 16, 2018, the petitioner filed an amendment to his § 2255 motion. [Doc. 102]. The matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be **DENIED**.

I.   **Procedural and Factual Background**

A sealed indictment was filed on June 10, 2014, [Doc. 1], charging Manuel with distribution of a quantity of a mixture and substance containing a detectable amount of cocaine base, a Schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) on nine identified occasions (Counts One – Nine). In Count Ten, the Grand Jury further charged Manuel with possession with the intent to distribute of 28 grams of more of cocaine base in

---

[1]   All references are to docket entries in case No. 2:14-CR-75 unless otherwise indicated.

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Count Eleven charged Manuel with using and maintaining a place for the purpose of distributing cocaine base in violation of 21 U.S.C. § 856(a)(1).

On September 3, 2014, petitioner filed a *pro se* motion to substitute his attorney, [Doc. 23], which was granted on September 25, 2014, following a hearing on the motion, [Doc. 25]. On November 12, 2014, the United States filed a Plea Agreement signed by the petitioner, in which Manuel agreed to plea guilty to Count Ten of the indictment, with all other Counts to be dismissed. [Doc. 28]. A Change of Plea hearing was held before the Court on November 18, 2014. A sentencing hearing was held on December 21, 2015 following the withdrawal and replacement of petitioner's second attorney, [Doc. 56]. Manuel was sentenced to 144 months of imprisonment followed by 6 years of supervised release, [Doc. 81]. The judgment was entered on December 30, 2015, [Doc. 81], and Manuel filed his notice of direct appeal the next day, [Doc. 83]. Manuel filed a *pro se* motion to remove his third attorney as counsel for his appeal, [Doc. 85], which was denied by the Magistrate Judge, [Doc. 88]. The Sixth Circuit Court of Appeals affirmed the District Court's judgment on March 20, 2017, [Doc. 97]. Petitioner timely filed his motion to vacate pursuant to 18 U.S.C. § 2255 on June 26, 2017, [Doc. 99].

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the

movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).   To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v.  Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994).  *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion).  If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside.  *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978).  To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure.  *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).  In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152 (1982).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal.  *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United*

*States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). *See also Bousley*, 523 U.S. at 622-23. This hurdle a petitioner faces to excuse procedural default is "intentionally high[,]… for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Further, federal inmates are not entitled to relitigate claims that were raised and considered on direct appeal absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

### III. Analysis and Discussion

Pursuant to his plea agreement, the petitioner has explicitly waived the right to file a § 2255 motion, except for claims of ineffective assistance of counsel or prosecutorial misconduct not known to him by the time of the entry of judgment. [Doc. 28, ¶ 10(b)]. The shortcomings of counsel about which the petitioner complains would have been known by him before the entry of judgment. A defendant may waive any right, even a constitutional right, if he does so knowingly and voluntarily, and that a waiver provision in a plea agreement is enforceable. *See United States v. Fleming*, 239 F.3d 761, 263-64 (6th Cir. 2001); *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995). "[A] defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450-52 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). Here, because petitioner knowingly and voluntarily waived his right

to file a § 2255 motion with few exceptions, and these claims do not fall within one of those exceptions, these claims have been waived. Nonetheless, the Court will address the merits.

Petitioner raises two issues in his § 2255 motion. First, he claims that an intervening change in the law under *Mathis v. United States*, 136 S. Ct. 2243 (2016) has taken place that should retroactively change his designation as a career offender. Second, petitioner argues that he received ineffective assistance of counsel during his conviction and sentencing process when his attorney did not object to certain evidence obtained pursuant to the search of petitioner's home. The Court will address each of these grounds in turn.

### A. Ground One: *Mathis v. United States*

Petitioner argues that one of the predicate offenses that resulted in his designation as a career criminal was improperly applied in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016). The conduct petitioner references is his 2006 conviction for sale or delivery of a controlled substance, in violation of Tennessee Code Annotated § 39-17-417(a). Petitioner argues that this statute qualifies as "divisible" because "there is no way to determine whether Manuel's conviction for the offense of the sale of less than .05 grams of cocaine or the delivery of that amount." [Doc. 99]. The government, in its response, [Doc. 101], argues that, even post-*Mathis*, Tennessee Code Annotated § 39-17-417 remains a controlled-substance offense under the career offender guideline, and properly qualifies as a predicate offense. The government further claims that petitioner's challenge to his career offender classification is procedurally defaulted by his failure to raise the issue on direct appeal. However, petitioner bases his claim in part on *Mathis*, which was decided following the petitioner's notice of direct appeal on December 31, 2015. [Doc. 81]. Therefore the Court will address the petitioner's claim under *Mathis*.

In *Mathis v. United States*, the Supreme Court held: (1) a prior conviction cannot qualify as

to file a § 2255 motion with few exceptions, and these claims do not fall within one of those exceptions, these claims have been waived. Nonetheless, the Court will address the merits.

Petitioner raises two issues in his § 2255 motion. First, he claims that an intervening change in the law under *Mathis v. United States*, 136 S. Ct. 2243 (2016) has taken place that should retroactively change his designation as a career offender. Second, petitioner argues that he received ineffective assistance of counsel during his conviction and sentencing process when his attorney did not object to certain evidence obtained pursuant to the search of petitioner's home. The Court will address each of these grounds in turn.

### A. Ground One: *Mathis v. United States*

Petitioner argues that one of the predicate offenses that resulted in his designation as a career criminal was improperly applied in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016). The conduct petitioner references is his 2006 conviction for sale or delivery of a controlled substance, in violation of Tennessee Code Annotated § 39-17-417(a). Petitioner argues that this statute qualifies as "divisible" because "there is no way to determine whether Manuel's conviction for the offense of the sale of less than .05 grams of cocaine or the delivery of that amount." [Doc. 99]. The government, in its response, [Doc. 101], argues that, even post-*Mathis*, Tennessee Code Annotated § 39-17-417 remains a controlled-substance offense under the career offender guideline, and properly qualifies as a predicate offense. The government further claims that petitioner's challenge to his career offender classification is procedurally defaulted by his failure to raise the issue on direct appeal. However, petitioner bases his claim in part on *Mathis*, which was decided following the petitioner's notice of direct appeal on December 31, 2015. [Doc. 81]. Therefore the Court will address the petitioner's claim under *Mathis*.

In *Mathis v. United States*, the Supreme Court held: (1) a prior conviction cannot qualify as

a predicate offense under the enumerated-offense clause if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfying a single indivisible element; and (2) Iowa's burglary statute—which defined "structure" as "any building, structure, [or] land, water, or air vehicle"—was incapable of supporting ACCA enhancement because the provision was both indivisible and overbroad. *Mathis*, 136 S. Ct. 2246, 2251–52, 2256–57 (2016). In reaching the first conclusion, the Supreme Court expressly overruled *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015). *See id.* at 2251 n.1 (noting the existence of a circuit split about whether the modified categorical approach could be used to distinguish between differing factual means of satisfying a single statutory element and reversing Sixth Circuit's decision on that issue in *Ozier*).

To determine whether a particular offense qualifies as a violent felony under § 924(e), courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which courts look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the courts' task is complete. It is only when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that courts must determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple, alternative versions of the crime. *Id.* at 2281. When faced with a divisible statute, courts resort to the "modified categorical approach," consulting "a limited class of documents, such as indictments and jury instructions, to determine

6

which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* An indivisible statute is one that contains a single crime, set of elements. *Mathis*, 136 S. Ct. at 2249. Because the categorical approach is concerned with elements and not the "facts underlying [the] conviction," *Descamps*, 133 S. Ct. at 2285, it is important that courts distinguish between alterative elements—divisible provisions to which the modified categorical approach can be applied—and alternative means for satisfying a single element—indivisible provisions to which it cannot. *Mathis*, 136 S. Ct. at 2253–54. Convictions under an overly broad, indivisible provision are incapable of serving as predicate offenses under the ACCA. *Id.*

At the outset the Court must note that the decision in *Mathis* is not retroactive, and therefore cannot provide relief to the petitioner.

> [C]ourts have established that the 2016 holding in *Mathis* does not apply retroactively, because *Mathis* did not create a new rule of law which applies retroactively to cases on collateral review. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive."). The Supreme Court gave no indication in *Mathis* that it intended its holding to be applied retroactively to cases on collateral review. *See In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016) (finding that inmate "failed to make a prima facie showing that *Mathis* … set forth new rules of constitutional law that have been made retroactive to cases on collateral review."); *United States v. Taylor*, 672 F. App'x 860, 864 (10th Cir. 2016) (holding that "*Mathis* did not announce a new rule")[.]

*United States v. Gentry*, 2017 WL 4081875 at *2 (E.D. Ky. Aug. 4, 2017); *see also In re Conzelmann*, 872 F.3d 375, 377 (6th Cir. 2017) (denying an application for leave to file a second or successive § 2255 motion because "*Mathis* has not been declared retroactive by the Supreme Court.").

Regardless, the decision in *Mathis* cannot aid the petitioner in his argument that his 2006 conviction under Tennessee Code Annotated § 39-17-417 was improperly applied as a predicate offense for his career offender status. Post-*Mathis*, the Sixth Circuit has continued to hold that

7

Tennessee Code Annotated § 39-17-417 is a controlled substance offense for purposes of the career offender guideline calculation. *See United States v. Alexander*, 686 Fed. App'x 326, 328 (6th Cir. 2017). The 2014 sentencing guidelines, which were used to determine the defendant's offense level at the time of sentencing, define the term "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of controlled substance (or counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b). Tennessee Code Annotated § 39-17-417(a)(1)-(4) makes it illegal to manufacture, deliver, sell, or possess with the intent to manufacture, deliver, or sell a controlled substance:

> (a) It is an offense for a defendant to knowingly:
>
> (1) Manufacture a controlled substance;
>
> (2) Deliver a controlled substance;
>
> (3) Sell a controlled substance; or
>
> (4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.

T.C.A. § 39-17-417(a)(1)-(4). It is clear that the Tennessee statute in question qualifies as a controlled substance offense. *See Stone v. Butler*, 2017 WL 5618289 at *2 (E.D. Ky. Nov. 20, 2017) ("Courts have therefore consistently held that a conviction under Tennessee's controlled substances act qualifies as a valid predicate for an enhancement under 21 U.S.C. § 841(b)(1)(A).").

Petitioner argues that Tennessee Code Annotated § 39-17-417(a)(2), (3) punishes the sale or delivery of a controlled substance, and is therefore a divisible statute, having alternative elements. [Doc. 99 at 4]. The petitioner claims that "[a] sale as prohibited by the statute could occur if it was the result of a 'bargained-for' transfer or delivery of a controlled substance.

8

Alternatively, a delivery does not necessarily require that it be 'bargained-for.'" [*Id*.]. He further states that "the number of scenarios related to this small amount of cocaine is vast," and that the elements of the offense for his state conviction were "never determined." [*Id*.]. The petitioner does not provide authority for the "bargained-for" requirement, and such language does not appear in the guidelines or the Tennessee statute. In fact, the defendant sought to make this identical distinction during his sentencing hearing; that objection was overruled by this Court. [Doc. 90 at 6-7]. Rather, it appears that the petitioner is confusing "alternative elements" with separate facts or circumstances under which a person may be convicted. Just because Tennessee Code Annotated § 39-17-417(a)(1)-(4) criminalizes four different actions related to controlled substances does not render it a divisible statute:

> In *Mathis*, the Supreme Court reiterated that a statute is considered "divisible," therefore permitting use of the modified categorical approach to determine whether a prior offense may be used to enhance a sentence under 18 U.S.C. § 924(e)(1), *only when it contains alternative elements (hence defining multiple offenses), not when it merely contains alternative factual means of committing a single offense*.

*Stone*, 2017 WL 5618289 at *2 (holding that Tennessee Code Annotated § 39-17-417 is not a divisible statute) (emphasis added). This Court, during the defendant's sentencing, made similar remarks in response to the defendant's objections:

> [T]he Sixth Circuit finds that whether it's manufacture, possession with intent to manufacture, deliver or sell, it is a categorical controlled substance offense. … [T]here is no meaningful distinction between possessing narcotics with intent to manufacture, intent to deliver or intent to sell. Possessing with intent to manufacture, import, export, distribute or dispense is a categorical controlled substance offense. … It makes no difference, frankly, whether this is a divisible or non-divisible statute. It has been clearly held by the Sixth Circuit in a post-*Descamps* case to be included within the guidelines' definition of a controlled substance offense, and that's the end of the argument; that's the end of the Court's analysis.

9

[Doc. 90 at 6-7, referencing *Descamps v. United States*, 570 U.S. 254 (2013)]. The decision in *Mathis* does not impact this finding. Therefore, petitioner's claim that his 2006 drug conviction was not a valid predicate offense under U.S.S.G. § 4B1.2 is without merit.

### B. Ground Two: Ineffective Assistance of Counsel

Petitioner's second claim for relief is based on his counsel's failure to object to the drugs that were found pursuant to a search of petitioner's septic system by members of Tennessee's Third Judicial Drug Task Force officers. [Doc. 99 at 8]. Paragraph 8 of the Presentence Investigation Report ("PSR") states that while executing a search of the petitioner's home, officers heard water running, and thus conducted a search of the petitioner's septic system with the assistance of Roto-Rooter. [Doc. 31]. At the end of the septic line, officers recovered baggies containing approximately 54 grams of crack cocaine. The petitioner claims that his attorney should have filed a motion to suppress this evidence because "authorities expanded the scope of the search warrant as they saw fit, they used private individuals to dig up the septic system and they charged Manuel with what they found." [Doc. 99].

The government first argues that, "[t]o the extent that the petitioner attempts to litigate a Fourth Amendment claim, his claim is waived, because he pleaded guilty." [Doc. 101]. The government also claims that the petitioner's Fourth Amendment argument is speculative, and that his attorney did not have an obligation to file a motion that had no merit, regardless of petitioner's insistence that he do so. Finally, because the petitioner did not show that the outcome would have been different had his attorney filed a suppression motion, the government argues that the petitioner cannot show that he was prejudiced by the lack of filing, and cannot therefore demonstrate that his counsel was constitutionally ineffective.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

A critical flaw in petitioner's argument rests in the fact that he pled guilty to the offense conduct contained in his plea agreement, and afterward attempted to challenge the factual findings. Petitioner raised this issue for the first time six months after his change of plea hearing when he filed a *pro se* motion for discovery, [Doc. 50]. The petitioner included a copy of a letter that he presumably provided to his attorney at that time, expressing his desire to hold an evidentiary hearing on the amount of cocaine base attributable to him and to suppress evidence discovered in the septic system. [*Id.*]. The defendant's motion was ultimately denied as moot "because counsel has provided his discovery to him." [Doc. 56]. The petitioner's signed plea agreement clearly

12

provided that "the parties agree that the defendant should be held responsible for more than 28 grams, but less than 112 grams [of cocaine base]." [Doc. 28]. It is clear that the petitioner voluntarily pled guilty to the offense. The resulting advisory guideline imprisonment range calculated in the PSR was for 188-235 months, [Doc. 70], and the petitioner was ultimately sentenced below that range to 144 months of imprisonment. [Doc. 81].

It is clear that his objections to the search and seizure of the drugs found in his septic system are not timely, and are therefore waived:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). For this reason, petitioner cannot demonstrate that he was prejudiced by counsel's failure to raise the suppression issue because petitioner had already pled guilty to the conduct to which he now objects.

Petitioner attempted to clarify his position in his supplemental filing, stating that he is in "no shape, form, or fashion" challenging his plea, but is "simply specifically only challenging the sentence." [Doc. 102]. However, the petitioner's ineffective assistance of counsel claim is based in his challenge of underlying facts of his case. Petitioner seeks to attack his sentence by challenging facts asserted in the plea agreement that he signed, and that the Sixth Circuit found was entered into voluntarily:

> And, because he entered into a valid and unconditional guilty plea, he has waived any non-jurisdictional claims that he may have regarding the pre-trial proceedings, including any claims concerning the seizure of evidence and counsel's alleged failure to file a motion to suppress that he alluded to in his post-plea motion for discovery.

[Doc. 97]. It is clear, then, that petitioner has waived the claim that underlies his assertion that his counsel provided ineffective assistance. It is clear from the controlling law that counsel for the petitioner could not raise the objection the petitioner sought, because the petitioner had already pled guilty. *Tollett*, 411 U.S. at 267. The petitioner therefore cannot demonstrate that he was prejudiced by counsel's failure to object, and thus cannot meet the standard established in *Strickland*. Therefore, petitioner's ineffective assistance of counsel claim is **DENIED**.

## IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his motion **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473

(2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealability.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
