UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:14-CR-00075-JRG-CRW |
| | ) | |
| SHAUNTRELL MANUEL | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as supplemented [Docs. 129, 147, 149]. The United States opposes Defendant's motion [Docs. 131, 138–139].

Also before the Court are the Defendant's pro se motion to reduce sentence pursuant to the First Step Act [Doc. 114], and his pro se motion to appoint counsel [Doc. 115]. The United States opposes Defendant's request for a sentence reduction [Doc. 120]. For the reasons that follow, each of Defendant's three motions will be denied.

**I.　BACKGROUND**

On December 21, 2015, Defendant was sentenced to 144 months' imprisonment based on his conviction for possession with the intent to distribute 28 grams or more of cocaine base in violation of 21 USC § 841(a)(1), 21 USC841(b)(1)(B) [Doc. 81]. Defendant was sentenced as a "career offender" based on two prior Tennessee convictions for selling or delivering cocaine [Doc. 31 at 12]. The Defendant is presently housed at Allenwood Low Federal Correctional Institution with a projected release date of October 4, 2023. *See* Inmate Locator, Bureau of Prisons, https//www.bop.gov.inmateloc/ (last visited February 1, 2022).

On September 30, 2020, Defendant filed a motion in which he asked the Court to place him on home confinement in light of his medical conditions and the COVID-19 pandemic [Doc. 129]. Defendant cited the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"),[1] as the legal basis for his motion. In response, the United States pointed out that the Court lacks authority to grant Defendant relief under the CARES Act because the CARES Act empowered the Bureau of Prisons ("BOP"), not the Court, to extend an inmate's length of time on home confinement [Doc.131 at 2]. In his reply, Defendant acknowledged his "mistake" and clarified that he is seeking compassionate release, not relief under the CARES Act [Doc. 136 at 1]. The Court, therefore, construes Defendant's original filing [Doc. 129] as a motion for compassionate release.

Defendant moves for compassionate release based on his heightened risk of serious complications from COVID-19 due to his obesity, diabetes, history of smoking, and sleep apnea. [*see* Docs. 129, 147]. He also asks the Court to consider his rehabilitative efforts and the lighter sentence he would have received if he had been sentenced after *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam).

## II. LEGAL STANDARD

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Section 3582(c)(1)(A)(i) of Title 18, United States Code authorizes district courts to consider defendant motions for sentence reduction based on "extraordinary and compelling reasons."

---

[1] 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020).

Before seeking compassionate release from the court, a defendant must first "exhaust the BOP's administrative process" or wait "thirty days after the warden has received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Exhaustion of administrative remedies is a "mandatory condition" for defendant-filed motions for compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). However, because the administrative exhaustion requirement operates as a "claim processing rule," it may be waived or forfeited by the Government. *Id*. at 833–34.

If the exhaustion requirement has been met, a court may grant a motion for compassionate release if (1) "extraordinary and compelling reasons merit a sentence reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the court has "considered the factors…in 18 U.S.C. § 3553(a), to the extent that they apply." § 3582(c)(1)(A). However, when the defendant, rather than the BOP, files a motion for compassionate release, the court "may skip step two of the [Section] 3583(c)(1)(A) inquiry" and has "full discretion to define 'extraordinary and compelling circumstances' without consulting the policy statement in [U.S.S.G.] § 1B1.13.'" *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). A motion for compassionate release may be denied when one of the substantive requirements is not met. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### III.   ANALYSIS

#### A.   Exhaustion

Defendant has presented evidence of his exhaustion efforts within the BOP [*See* Doc. 134 at 2]. Defendant filed a request to be considered for compassionate release with the BOP on October 6, 2020, and his request was denied on October 21, 2020 [*See id.*]. Thus, the Court finds that it has authority under § 3582(c)(1)(A) to address the merits of Defendant's motion.

### B. Merits

#### 1. Extraordinary and Compelling Reasons

As mentioned above, Defendant seeks compassionate release based upon his medical conditions amid the COVID-19 pandemic [Docs. 129, 147, 149]. He contends that his increased risk of serious illness from COVID-19, when considered alongside the Court of Appeals's decision in *Havis,* constitutes extraordinary and compelling reasons for a sentence reduction [Docs. 129, 147, 149].

The BOP reports that Defendant's correctional facility currently has 28 confirmed cases of COVID-19 among the inmate population and 21 confirmed cases among staff. *COVID-19: Coronavirus*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 1, 2022). These numbers are not insignificant. However, they are not extraordinary. The pandemic has caused an ongoing crisis across the nation, both inside and outside the prison setting. Accordingly, the pandemic alone cannot justify compassionate release. *See, e.g.*, United States v. Shah, No. 16-20457, 2020 U.S. Dist. LEXIS 73313, at *4–5, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility…, whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at Defendant's correctional complex, 583 staff and 1970 inmates have been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Feb. 1, 2022). Defendant states that he is "fully vaccinated," but suggests the vaccine may not have been

effective due to mishandling by BOP and because he did not feel an effect after he received his shots [Doc. 147 at 1, 4].

Defendant is 43 years old [Doc. 31 at 1] and his medical records from the BOP, dated January 26, 2021, show that he has been diagnosed with obesity, a sleep disorder, carpal tunnel syndrome and acute sinusitis, among other conditions [*See* Doc. 140 at 1–2]. In addition, Defendant asserts that he has diabetes, high blood pressure and a history of smoking [Doc. 147 at 4].

Obesity, diabetes, and a history of smoking are conditions that "can" increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 1, 2022). Hypertension may "possibly" increase the risk of severe illness from COVID-19. *Id*. Sleep apnea may also elevate an individual's risk of severe complications. *See* WebMD, Sleep Apnea Raises Odds for Severe COVID-19, available at https://www.webmd.com/lung/news/20210518/sleep-apnea-raises-odds-for-severe-covid-19#1 (last visited Feb. 1, 2022).

Of the conditions cited by Defendant, only obesity appears to be documented in his medical records [*See* Doc. 140 at 1]. However, even assuming that Defendant suffers from all of the conditions he mentions, his medical conditions are not uncommon, nor does he claim that they are live-threatening or untreatable. Moreover, Defendant is fully vaccinated. A defendant's "access to the COVID-19 vaccine substantially undermines his request for a sentence reduction" because "with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). "[T]o the extent prisons do offer some unique challenges" such as social distancing, "the vaccine now significantly

5

Case 2:14-cr-00075-JRG-CRW   Document 154   Filed 02/02/22   Page 5 of 11   PageID #: 1711

reduces the risks associated with COVID-19." *Id*. In light of Defendant's vaccinated status there is insufficient evidence that his medical conditions render him significantly vulnerable in the prison setting at this time. Nor has Defendant presented the Court with evidence that his vaccination was ineffectual.

Defendant also argues that the court's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam) constitutes an extraordinary and compelling circumstance warranting release because if he were sentenced today, he would no longer be considered a career offender.[2] To date, the Supreme Court has not made the holding in *Havis* retroactive to cases on collateral review. *See In re Conzelmann*, 872 F.3d 375, 377 (6th Cir. 2017) ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive.").

A nonretroactive change in the law cannot, by itself, constitute extraordinary and compelling circumstances. *See, e.g. United States v. Wills*, 997 F.3d 685 (6th Cir. 2021) (no extraordinary and compelling circumstances where defendant argued that if he were sentenced today, his sentencing enhancement would be obviated by the First Step Act of 2018[3]). The Sixth Circuit is currently divided regarding whether a nonretroactive change in the law may be considered as part of a court's extraordinary and compelling analysis. *See, e.g. United States v. McKinnie*, No. 21-3608, 2022 U.S. App. LEXIS 2418, at *10 (6th Cir. Jan. 26, 2022) (nonretroactive changes in the law, and specifically *Havis*, cannot be considered at all when court reviews extraordinary and compelling circumstances); *United States v. McCall*, 2021 U.S. App. LEXIS 37351 at *17 (December 17, 2021) ("[A] court may consider a nonretroactive change in

---

[2] In *Havis*, the Court of Appeals found that a defendant's prior Tennessee conviction for selling or delivering cocaine did not qualify as a "substance offense" for the purposes of sentencing enhancement under the Federal Sentencing Guidelines. 927 F.3d at 387.

[3] Pub. L. No. 115-391, 132 Stat. 5194.

the law as one of several factors forming extraordinary and compelling circumstances."); *United States v. Hunter*, 12 F. 4th 555, 564 (6th Cir. 2021) (holding that "nonretroactive changes in the law, whether alone or in combination with other personal factors are not 'extraordinary and compelling reasons' for a sentence reduction").

The Court need not decide whether it may consider Defendant's *Havis* argument here, because even assuming *Havis* may be considered, Defendant's circumstances do not rise to the level of exceptional and compelling.

Lastly, the Court notes Defendant's argument regarding his rehabilitative efforts. While the Court considers disciplinary records and rehabilitative efforts to be highly relevant to a discussion of the § 3553(a) factors, the Court does not find those facts sufficient to constitute "extraordinary and compelling" grounds for compassionate release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)).

The Court finds that Defendant's COVID-related health concerns and other arguments are not extraordinary and compelling circumstances warranting compassionate release.

### 2. 18 U.S.C. § 3553(a) Factors

Even if the Court found that Defendant has shown extraordinary and compelling reasons for compassionate release, the 18 U.S.C. § 3553(a) factors do not support a sentence reduction. Under 18 U.S.C. § 3553(a), the Court considers the following factors in determining the sentence to be imposed:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . .

First, the Court considers the conduct underlying Defendant's offense. Defendant admitted to the following conduct, as described in his plea agreement:

> Members of Tennessee's Third Judicial Drug Task Force (3rd DTF) began an investigation into the cocaine base (crack) dealing of Shauntrell Manuel and developed a confidential informant that was able to purchase the drug from Manuel at Manuel's residence located at 177 Hillcrest Street on the outskirts of Greeneville, Tennessee. The defendant admits that on May 5, 2014, he received a text message arranging a possible crack cocaine deal from a confidential informant and that he responded via text that "he was at his peoples house and would be home in 10 minutes or so." The defendant further admits that the confidential informant traveled to Manuel's residence where he/she purchased two small bags of crack cocaine for $400 with prerecorded buy funds. The crack purchased from Manuel on May 5, 2014 was analyzed by the TBI and was determined to be cocaine based, a schedule II controlled substance, with a weight of 2.34 grams.
>
> The defendant admits that after the controlled transaction on May 5, 2014, agents with the 3rd DTF obtained and executed a search warrant at his residence later that same day. Officers found several bags of marijuana throughout the house and $7,785 in cash - $400 of which were recorded buy funds that were found in the master bedroom. Agents also found multiple plastic baggies consistent in appearance with the type of baggies the defendant used for distribution. No cocaine was found during the initial search of the residence, but the officers noted that when they gained entrance into the house Manuel was coming out of the bathroom and had heard the water running. Officers then called Roto-Rooter who put a camera inside the septic system and identified several plastic baggies at the end of the septic line running into the tank. Officers were able to retrieve the baggies and recovered approximately 54 grams of crack.

[Doc. 28 ¶ 4]. The Court finds that Defendant's offense was serious and that the severity of the offense emphasizes the need for adequate deterrence, just punishment, and protection of the public from future offenses by the defendant.

Defendant's criminal history is extensive. At the time of sentencing, he was designated a career offender in light of his two prior convictions for selling or delivering a schedule II substance. His past record also includes convictions for possession of crack cocaine, driving under the influence, possession of drug paraphernalia, failure to appear, evading arrest, facilitating sale of crack cocaine, marijuana possession, and other driving-related offenses. In addition, Defendant has a history of violating probation [*see* Doc. 31 ¶ 31, 36]. The Court finds that Defendant's violations of probation call into question his respect for the law and whether he would abide by the conditions of supervised release in this case if compassionate release were granted.

When reviewing the § 3553(a) factors, this Court may consider the amount of time that a defendant has served on a sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). In this case, the Court sentenced Defendant to 144 months of imprisonment and his projected release date is October 4, 2023, approximately 20 months from now. The Court finds that the amount of time remaining on Defendant's sentence is necessary to promote a just punishment. Moreover, the Court sentenced Defendant to a term of imprisonment below the advisory guidelines, which were 188 months to 235 months [Doc. 31 at 16]. Any further reduction in sentence might result in an unwarranted sentence disparity with similarly situated career offenders. *See* 18 U.S.C. § 3553(a)(6).

The Court acknowledges Defendant's claim that he has made rehabilitative efforts and commends him for participating in drug education classes and working various jobs within the prison [Doc. 136 at 2–3]. The Court also recognizes the letter that Defendant's sister submitted

on his behalf [Doc. 142]. However, these positive facts, as well Defendant's *Havis* argument to the extent it may apply here, are still outweighed by the other relevant sentencing factors.

After considering the applicable § 3353(a) factors and all evidence of record, the Court finds that the § 3353(a) factors weigh against granting compassionate release at this time. A sentence reduction in this case would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

**IV.    ADDITIONAL MOTIONS**

The Court now turns to Defendant's pro se motion to reduce sentence pursuant to the First Step Act[4] [Doc. 114]. The First Step Act made the sentencing reforms of the Fair Sentencing Act[5] retroactive to defendants whose offense occurred before August 3, 2010. However, Defendant was sentenced after August 3, 2010 in accordance with the Fair Sentencing Act [Doc. 70, Doc. 81], so the First Step Act's retroactivity provision does not apply to him. In the motion, Defendant also raises issues of ineffective assistance of counsel and seeks to challenge his career offender designation. However, these claims are properly raised by seeking permission from the Court of Appeals to file a second or successive petition. Accordingly, the Court will deny the motion [Doc. 114].

Defendant's motion to appoint counsel is likewise denied. As the Court explained previously [*see* Doc. 112], Defendant does not have a right to appointment of counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990 (1987) ("[T]he

---

[4] Pub. L. No. 115-391, 132 Stat. 5194 (2018).
[5] Pub. L. No. 111-120, 124 Stat. 2372 (2010).

right to appointed counsel extends to the first appeal of right, and no further."). Defendant provides no basis for appointment of an attorney and the Court declines to appoint one at this time.[6]

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release [Doc. 129, 147, 149], his motion for resentencing under the First Step Act [Doc. 114] and motion for appointment of counsel [Doc. 115] are **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that pursuant to the Court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a pro se 3582(c)(1)(A) motion. FDSET has filed notice that, after a review of Defendant's case, it does not intend to submit any pleadings [Doc. 137].